**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: | : Bankruptcy No. 19-12595-ELF |
| Mark Nottingham and Carolynn Nottingham | : Chapter 13 |
| Debtors | : |
| | : |
| Onyx Bay Trust c/o Select Portfolio Servicing, Inc. | : |
| Movant | : |
| | : |
| Mark Nottingham and Carolynn Nottingham | : |
| Debtors/Respondents | : |
| and | : |
| William C. Miller, Esquire | : |
| Trustee/Respondent | : |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY, UNDER 11 U.S.C. § 362</u>

Movant, by its Attorneys, Hladik, Onorato & Federman, LLP, hereby requests a Termination of the Automatic Stay and leave to proceed with its State Court rights provided under the terms of the Mortgage.

1.　　　Movant is Onyx Bay Trust c/o Select Portfolio Servicing, Inc. ("Movant").

2.　　　Debtors, Mark Nottingham and Carolynn Nottingham ("Debtors") are the owners of the premises located at 1218 Primose Court a/k/a 1218 Primrose Court, Bensalem, PA 19020 (the "Property").

3.　　　William C. Miller, Esquire is the Trustee appointed by the Court.

4.　　　Debtors filed a Petition for Relief under Chapter 13 of the Bankruptcy Code on April 23, 2019.

5.　　　Movant is the holder of a mortgage lien on the Property in the original principal amount of $36,912.25, which was recorded on October 28, 2008 (the "Mortgage"). A true and correct copy of the Mortgage is attached hereto as Exhibit "A."

6.　　　The Mortgage was assigned to Movant by way of a written assignment of mortgage, which was executed on February 06, 2020. A true and correct copy of the assignment of mortgage is attached hereto as Exhibit "B."

7.　　　As of 12/08/2019, the unpaid principal balance is $34,104.81.

8.　　　As of 12/08/2019, Movant has not received the monthly post-petition Mortgage payments from July 01, 2019 through December 01, 2019 in the amount of $175.02 each, for a total post-petition arrearage of $1,050.12.

9.      The entity that has the right to foreclose is Onyx Bay Trust c/o Select Portfolio Servicing, Inc., by virtue of being owner and holder of note.

10.      Movant has cause to have the Automatic Stay terminated, in order to permit Movant to complete foreclosure on its Mortgage.

11.      This Motion and the averments contained herein do not constitute a waiver by the Movant of its right to seek reimbursement of any amounts not included in this Motion, including fees and costs, due under the terms of the Mortgage and applicable law.

**WHEREFORE,** Movant respectfully requests that this Court enter an Order:

a.      Modifying the Automatic Stay under 11 U.S.C. § 362 of the Bankruptcy Code with respect to the Property as to permit Movant to foreclose on its Mortgage and allow Movant or any other purchaser at Sheriff's Sale to take legal or consensual action for enforcement of its right to possession of, or title to; and

b.      Granting any other relief that this Court deems equitable and just.

Respectfully Submitted,

Date: 2/13/2020

/s/Danielle Boyle-Ebersole, Esquire
Danielle Boyle-Ebersole, Esquire
Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454
Phone 215-855-9521/Fax 215-855-9121
debersole@hoflawgroup.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re: | : Bankruptcy No. 19-12595-ELF |
| Mark Nottingham and Carolynn Nottingham | : Chapter 13 |
| Debtors | : |
| | : |
| Onyx Bay Trust c/o Select Portfolio Servicing, | : |
| Inc. | : |
| Movant | : |
| | : |
| Mark Nottingham and Carolynn Nottingham | : |
| Debtors/Respondents | : |
| and | : |
| William C. Miller, Esquire | : |
| Trustee/Respondent | : |

## <u>CERTIFICATION OF SERVICE OF MOTION,</u>
## <u>RESPONSE DEADLINE AND HEARING DATE</u>

I, Danielle Boyle-Ebersole, Esq., attorney for Movant, Onyx Bay Trust c/o Select Portfolio Servicing, Inc., hereby certify that I served a true and correct copy of the Motion for Relief from Automatic Stay and Notice of Motion, Response Deadline and Hearing Date, by United States Mail, first class, postage prepaid, or Electronic Mail on **02/13/2020** upon the following:

| | |
|---|---|
| Brad J. Sadek, Esquire | Mark Nottingham |
| Via ECF | Carolynn Nottingham |
| *Attorney for Debtors* | 1218 Primrose Court |
| | Bensalem, PA 19020 |
| William C. Miller, Esquire | Via First Class Mail |
| Via ECF | *Debtors* |
| *Trustee* | |

Dated: 02/13/2020

/s/Danielle Boyle-Ebersole, Esquire
Danielle Boyle-Ebersole, Esquire
Hladik, Onorato & Federman, LLP
298 Wissahickon Avenue
North Wales, PA 19454
Phone 215-855-9521/Fax 215-855-9121
debersole@hoflawgroup.com

# **EXHIBIT A**

### BUCKS COUNTY RECORDER OF DEEDS
**55 East Court Street**
**Doylestown, Pennsylvania  18901**
**(215) 348-6209**

Instrument Number - 2008091274
Recorded On 10/28/2008 At 12:18:07 PM        * Total Pages - 7
* Instrument Type - MORTGAGE - CORPORATIONS
Invoice Number - 276151        User -  NMS
* Mortgagor - NOTTINGHAM, MARK
* Mortgagee - AMERICAN GEN FIN SERV INC
* Customer - SIMPLIFILE LC E-RECORDING
* FEES
RECORDING FEES        $50.50
TOTAL PAID        $50.50

This is a certification page

## DO NOT DETACH

This page is now part
of this legal document.

RETURN DOCUMENT TO:
DATA SEARCH, INC.
797 CROMWELL PARK DRIVE, SUIT
GLENBURNIE, MD 21061

I hereby CERTIFY that this document is
recorded in the Recorder of Deeds Office
of Bucks County, Pennsylvania.

Edward R. Gudknecht
Recorder of Deeds

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

Book: **5937**  Page: **1736**

Prepared By:
American General Financial Services, Inc.
Return To:
American General Financial Services, Inc.
2078 Street Road
Bensalem, PA  19020

Premise Address:
1218 Primose Court
Bensalem, PA  19020

(Space Above This Line For Recording Data)

## MORTGAGE

THIS MORTGAGE entered into this __27th__ day of __October__, __2008__, between _____
__MARK NOTTINGHAM AND CAROLYNN NOTTINGHAM__ _____
_____ herein called
"Mortgagors", and __AMERICAN GENERAL FINANCIAL SERVICES, INC.__ _____
_____, the Mortgagee, a Pennsylvania corporation having a place of
business at __2078 STREET RD__ _____
__BENSALEM, PA 19020-3702__ _____ herein called "Mortgagee". WITNESSETH, that to
secure payment by Mortgagors of a Promissory Note/loan agreement of even date herewith, in the
principal amount of $___36912.25_, together with interest thereon computed on unpaid principal
balances from time to time outstanding (and/or any renewal, refinancing or extension thereof) and all
other obligations of Mortgagors under the terms and provisions of this Mortgage, Mortgagors do by these
presents sell, grant and convey to Mortgagee, ALL the following described real estate situated at
__1218 PRIMOSE COURT__ _____
__BENSALEM, PA 19020__ _____, County of __BUCKS COUNTY__ _____
Commonwealth of Pennsylvania, described as follows:  Municipal Tax Lot _____
Block _____

(Insert legal description of mortgaged premises)
SEE EXHIBIT A
Township of Bensalem

1218 PRIMOSE COURT
BENSALEM, PA 19020

Being premises conveyed to said Mortgagors by Deed of Conveyance duly recorded in the office of the
Recording of Deeds in said County in Deed Book No. _5736_____, Page _546_____, as said premises
are therein described.

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all
easements, rights, appurtenances, rents, all of which shall be deemed to be and remain a part of the
property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold
estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Mortgagor covenants that Mortgagor is lawfully seised of the estate hereby conveyed and has the
right to grant, bargain, mortgage and convey the property, and that the Property is unencumbered,
except for encumbrances of record.  Mortgagor covenants that Mortgagor warrants and will defend
generally the title to the Property against all claims and demands, subject to encumbrances of record.

**PROVIDED, HOWEVER,** that if the Note/loan agreement and all sums secured by this Mortgage are
paid in full, and Mortgagor performs all of the covenants and agreements of this Mortgage, then and in
such event, this Mortgage and any estate or lien hereby granted, together with the Note/loan agreement,
shall cease, determine, and become void.

PAB461 (07-15-07) Real Estate Mortgage

**MORTGAGE COVENANTS,** Mortgagor and Mortgagee covenant and agree as follows:

**1. Payment of Principal and Interest.** Mortgagor shall promptly pay when due the principal and interest indebtedness evidenced by the Note/loan agreement and late charges (if any) as provided in the Note/loan agreement.

**2. Taxes, Assessments, and Charges.** Mortgagor shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain priority over this Mortgage, and leasehold payments or ground rents, if any.

**3. Application of Payments.** Unless applicable law provides otherwise, Mortgagee will apply payments in accordance with the terms of the Note hereby secured.

**4. Prior Mortgages and Deed of Trust; Charges; Liens.** Mortgagor shall perform all of Mortgagor's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Mortgagor's covenants to make payments when due.

**5. Hazard Insurance.** Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Mortgagee may require and in such amounts and for such periods as Mortgagee may require.

The insurance carrier providing the insurance shall be chosen by Mortgagor subject to approval by Mortgagee; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Mortgagee and shall include a standard mortgage clause in favor of and in a form acceptable to Mortgagee. Mortgagee shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Mortgagee. Mortgagee may make proof of loss if not made promptly by Mortgagor.

If the Property is abandoned by Mortgagor, or if the Mortgagor fails to respond to Mortgagee within 30 days from the date notice is mailed by Mortgagee to Mortgagor that the insurance carrier offers to settle a claim for insurance benefits, Mortgagee is authorized to collect and apply the insurance proceeds at Mortgagee's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor shall keep the Property in good repair and shall not commit waste or permit demolition, impairment, or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Mortgagor shall perform all of Mortgagor's obligations under the declaration and covenants creating and governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Mortgagee's Security.** If Mortgagor fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding (including, but not limited to, any bankruptcy proceeding) is commenced which materially affects Mortgagee's interest in the Property, then Mortgagee, at Mortgagee's option, upon notice to Mortgagor, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Mortgagee's interest. If Mortgagee required mortgage insurance as a condition of making the loan secured by this Mortgage, Mortgagor shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Mortgagor's and Mortgagee's written agreement or applicable law.

Any amounts disbursed by Mortgagee pursuant to this Paragraph 7, with interest thereon, at the Note/loan agreement rate, shall become additional indebtedness of Mortgagor secured by this Mortgage. Unless Mortgagor and Mortgagee agree to other terms of payment, such amounts shall be payable upon notice from Mortgagee to Mortgagor requesting payment thereof. Nothing contained in this Paragraph 7 shall require Mortgagee to incur any expense or take any action hereunder.

**8. Inspection.** Mortgagee may make or cause to be made reasonable entries upon and inspections of the Property, provided that Mortgagee shall give Mortgagor notice prior to any such inspection specifying reasonable cause therefor related to Mortgagee's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Mortgagee, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Mortgagor Not Released; Forbearance By Mortgagee Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Mortgagee to any successor in interest of Mortgagor shall not operate to release, in any manner, the liability of the original Mortgagor and Mortgagor's successors in interest. Mortgagee shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Mortgagor and Mortgagor's successors in interest. Any forbearance by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Mortgagee and Mortgagor, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Mortgagor shall be joint and several. Any Mortgagor who co-signs this Mortgage, but does not execute the Note/loan agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey the Mortgagor's interest in the Property to Mortgagee under the terms of this Mortgage; (b) is not personally liable on the Note/loan agreement or under this Mortgage; and (c) agrees that Mortgagee and any other Mortgagor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note/loan agreement without that Mortgagor's consent and without releasing that Mortgagor or modifying this Mortgage as to the Mortgagor's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to Mortgagor provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular mail addressed to Mortgagor at the Mortgagor's address stated herein or at such other address as Mortgagor may designate by notice to Mortgagee as provided herein; and (b) any notice to Mortgagee shall be given by certified mail to Mortgagee's address stated herein or to such other address as Mortgagee may designate by notice to Mortgagor as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located, except that if the Note/loan agreement specifies the law of a different jurisdiction as governing, such law shall be the applicable law governing the interest rate, fees, charges, and other terms of the credit transaction secured hereby. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note/loan agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note/loan agreement which can be given effect without the conflicting provisions, and to this end the provisions of this Mortgage and the Note/loan agreement are declared to be severable. As used herein, "costs", "expenses", and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Mortgagor's Copy.** Mortgagor shall be furnished with and acknowledges receipt of a conformed copy of the Note/loan agreement and of this Mortgage at the time of execution or after recordation thereof.

**15. Rehabilitation Loan Agreement.** Mortgagor shall fulfill all of Mortgagor's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Mortgagor enters into with Mortgagee. Mortgagee, at Mortgagee's option, may require Mortgagor to execute and deliver to Mortgagee, in a form acceptable to Mortgagee, an assignment of any rights, claims or defenses which Mortgagor may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Mortgagor.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Mortgagor is sold or transferred and Mortgagor is not a natural person) without Mortgagee's prior written consent, Mortgagee may at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Mortgagee if exercise is prohibited by federal law as of the date of this Mortgage.

If Mortgagee exercises this option, Mortgagee shall give Mortgagor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Mortgagor must pay all sums secured by this Mortgage. If Mortgagor fails to pay these sums prior to the expiration of this period, Mortgagee may invoke any remedies permitted by this Mortgage without further notice or demand on Mortgagor.

**17. Acceleration; Remedies.** Upon Mortgagor's breach of any covenant or agreement of Mortgagor in the Note/loan agreement or this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Mortgagee, after notice of intention to foreclose and opportunity to cure as provided by law, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and foreclose this Mortgage by judicial proceeding. Mortgagee shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of abstracts, title reports, and documentary evidence.

**18. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession.** As additional security hereunder, Mortgagor hereby assigns to Mortgagee the rents of the Property, provided that Mortgagor shall, prior to acceleration under Paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under Paragraph 17 hereof or abandonment of the Property, Mortgagee, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the Mortgagee or the Receiver shall be applied first to payment of the cost of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Mortgagee and the receiver shall be liable to account only for those rents actually received.

**19. Release.** Upon payment of all sums secured by this Mortgage, Mortgagee shall satisfy or release this Mortgage without charge to Mortgagor. Mortgagor shall pay all costs of recordation, if any.

**20. Interest Rate after Judgment.** Mortgagor agrees that the interest rate payable after a judgment is entered on the Note/loan agreement or in an action of mortgage foreclosure shall be the highest rate permitted by law, not to exceed the Note/loan agreement rate.

**21. Waiver of Exemptions.** To the extent permitted by law, Mortgagor hereby waives and transfers to Mortgagee any exemption rights permitted under applicable state or federal law with respect to the Property.

**IN WITNESS WHEREOF,** the said Mortgagors have signed this Mortgage, with seal(s) affixed, on the date first above written.

Signed, Sealed and Delivered in the Presence of

Witness: HUA LAM

Witness: STEPHANIE HERSH GORDON

Mortgagor: MARK NOTTINGHAM _____ (SEAL)

Mortgagor: CAROLYNN NOTTINGHAM _____ (SEAL)

COMMONWEALTH OF PENNSYLVANIA    )
                                )  SS
COUNTY OF BUCKS _____  )

On this, the 27th day of October , 2008 , before me_____
EDWARD J. ORTH _____, the undersigned officer, personally appeared
MARK NOTTINGHAM AND CAROLYNN NOTTINGHAM _____

known to me (or satisfactorily proven) to be the person whose name IS subscribed to the within instrument, and acknowledged that HE executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Title of Officer

NOTARIAL SEAL
EDWARD J. ORTH, Notary Public
Middletown Twp., Bucks County
My Commission Expires August 8, 2011

Exhibit A

ALL THAT CERTAIN lot or piece of ground, SITUATE in the Township of Bensalem, County of Bucks, Commonwealth of Pennsylvania, bounded and described according to a Plan of Subdivision and Land Development prepared for Salem Farm, made by Urwiler and Walter, Inc., dated June 29, 1987 and last revised April 20, 1989 and recorded June 8, 1989 in Plan Book 251 Page 85, as follows, to wit:

BEGINNING at a point on the Northeasterly side of Primrose Court as shown on said Plan a corner of Lot #48 on said Plan; THENCE extending along the Northeasterly changing to the northwesterly side of Primrose Court on the arc of a circle curving to the left having a radius of 50 feet the arch distance of 75.00 feet to a point; THENCE extending along Lot #46 on said Plan, North 22 degrees, 06 minutes, 06 seconds West 104.72 feet to a point on the Southeasterly side of Edge Avenue as shown on said Plan; THENCE extending along the same North 53 degrees, 08 minutes, East 103.00 feet to a point; THENCE extending along Lots #56 and #55 on said Plan, South 38 degrees, 00 minutes, East 199.68 feet to a point; THENCE extending along Lot #48 aforementioned South 75 degrees, 37 minutes, 03 seconds West 105.76 feet to a point and place of beginning.

BEING LOT #47 on said Plan

Subject to easements, restrictions, and covenants of record, if any.

WHEN RECORDED MAIL TO·
ONEMAIN FINANCIAL GROUP, LLC

**OneMain**
Financial

PO BOX 969
EVANSVILLE, IN 47706-0969

This instrument was prepared by JEFFERY B BOLIN                    on 03/08/19
PO BOX 969, Evansville, IN 47706-0969

[Space above This Line for Recording Data]

## LOAN MODIFICATION AGREEMENT - BALLOON FEATURE

**THIS AGREEMENT IS PAYABLE IN FULL AT MATURITY.  YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.  LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME.  YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| Security Instrument Filing Data | | |
|---|---|---|
| Instrument Dated | OCTOBER 27, 2008 | Original Loan Amount $36,912.25 |
| Recorded on | OCTOBER 28, 2008 | |
| Office Recorded in | BUCKS COUNTY | |
| County | BUCKS | |
| Location | BENSALEM, PA    19020 | |
| Book/Volume/Liber | Page _____ | File _____ |
| Doc/Instrument Number | 2008091274 | |
| Parcel ID | ▮▮▮▮▮▮▮ | |

This Loan Modification Agreement ("Agreement"), effective on **04/01/19** (the "Modification Effective Date") by and between _____
CAROLYN NOTTINGHAM AKA CAROLYNN NOTTINGHAM AND

MARK NOTTINGHAM _____ ("Borrower")
and OneMain Financial Group, LLC (DE)
SUCCESSOR BY MERGER TO  AMERICAN GENERAL FINANCIAL SERVICES, INC

_____ ("Lender"),

| Co# | | |
|---|---|---|
| ▮▮▮▮▮ | | |

Non-Escrow I B  Modification Agreement - Balloon                    Page 1 of 5

modifies, amends, and supplements (to the extent this Agreement is inconsistent with their terms): (1) the Mortgage, Deed of Trust, Deed to Secure Debt, or Security Deed ("Security Instrument"), as set forth herein above, and the Rider(s), if any, and (2) the Loan Agreement ("Note") to Lender, dated OCTOBER 27, 2008 , and secured by the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at:

1218 PRIMROSE COURT                BENSALEM, PA  19020                          .

If this Agreement is to be recorded, the real property described is set forth as follows:
SEE ATTACHED EXHIBIT A

This Agreement also supersedes and replaces any prior loan modification agreement(s) between Lender and Borrower as of the effective date of this Agreement

Terms not defined in this Agreement are as defined in the Note and/or Security Agreement.

As of the Modification Effective Date, the amount of the principal balance payable under the Note and the Security Instrument (the "Unpaid Principal Balance") will be $ 34101.52 , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized, if permitted by law

In consideration of the mutual promises and agreements contained herein, Borrower and Lender (together the "Parties") agree that beginning on the Modification Effective Date, and after both Parties have executed this Agreement, (notwithstanding anything to the contrary contained in the Note or Security Instrument)·

1.  The interest rate on the Unpaid Principal Balance will begin to accrue as of the date of this Agreement at 4.61 % $ 0.00 of the Unpaid Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 34101.52 . The unpaid and deferred interest that has not been capitalized (the "Deferred Interest") will be $ 115.95 . **Assuming no additional sums are advanced under the Note and assuming that all monthly payments are made in full and on time, my payment schedule, including my monthly payments and interest rate, based on the current principal balance, will be:**

| Months | Interest Rate | Interest Rate Change Date | Monthly Payment | Payment Begins On |
|---|---|---|---|---|
| 001 – 036<br>037 – 359<br>360 | 4.61<br>10.00<br>10.00 | 03/01/19<br>03/01/22<br>02/01/49 | 175.02<br>289.74<br>405.69 | 04/01/19<br>04/01/22<br>03/01/49 |

2.  Remaining Term. If Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement on the maturity date ("Maturity Date"), those amounts will be immediately due and payable on the Maturity Date by the Borrower.

The new Maturity Date will be 03/01/49

3   Place of Payment   Borrower must continue to make the monthly payments in the manner and at such place as Lender may require

4   Application of Payments   All payments will be applied in the following order·  (a) other charges provided in the Loan Documents or otherwise allowed by law; (b) late charges; (c) any past due credit insurance premiums billed on a monthly basis; (d) any past due loan payment(s); (e) currently due credit insurance premiums that are billed on a monthly basis; and (f) currently due loan payments. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest, with the remainder, if any, being applied to unpaid Principal. Because interest on Borrower's loan is earned daily, early payments will decrease the amount Borrower owes, and late payments will increase that amount  The payment schedule assumes that Borrower will make each payment on the day it is due; therefore, Borrower's final payment will be adjusted as appropriate to reflect any variation in the actual dates Borrower's payments are received by the Lender.  If any unpaid amounts remain due to Lender after Borrower's final scheduled payment due date, Borrower agrees to pay interest on these unpaid amounts, computed at the Interest Rate as provided in the Loan Documents (or if a loan modification agreement is executed, at the interest rate(s) provided in the loan modification agreement), until paid in full, to the extent permitted by applicable law.

5.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date of this Agreement:

(a)     All terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)     All terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

C E  Non-Escrow I B  Modification Agreement - Balloon                                Page 3 of 5

7. Borrower understands and agrees that:

  (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

  (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

  (c)  Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

  (d)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

  (e)  ☐ If checked, I was discharged in a bankruptcy proceeding subsequent to the execution of the Note and Security Instrument. Based on this representation, notwithstanding anything to the contrary in the Agreement, Lender agrees that I will not have personal liability on the Note and Security Instrument pursuant to this Agreement.

  (f)  If Borrower is the subject of a pending Chapter 13 bankruptcy case as of the date of this Agreement, this Agreement does not reflect or address the payment of that portion, if any, of the account balance which was delinquent as of the bankruptcy petition date ("Arrearage"). In addition to the Borrower's obligations under this Agreement, Borrower shall be liable to Lender for payment of any portion of the Arrearage which is not fully paid to Lender in accordance with the terms of Borrower's confirmed bankruptcy Plan or which is not discharged in bankruptcy.

  (g)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

Exhibit A

ALL THAT CERTAIN lot or piece of ground, SITUATE in the Township of Bensalem, County of Bucks, Commonwealth of Pennsylvania, bounded and described according to a Plan of Subdivision and Land Development prepared for Salem Farm, made by Urwiler and Walter, Inc., dated June 29, 1987 and last revised April 20, 1989 and recorded June 8, 1989 in Plan Book 251 Page 85, as follows, to wit:

BEGINNING at a point on the Northeasterly side of Primrose Court as shown on said Plan a corner of Lot #48 on said Plan; THENCE extending along the Northeasterly changing to the northwesterly side of Primrose Court on the arc of a circle curving to the left having a radius of 50 feet the arch distance of 75.00 feet to a point; THENCE extending along Lot #46 on said Plan, North 22 degrees, 06 minutes, 06 seconds West 104.72 feet to a point on the Southeasterly side of Edge Avenue as shown on said Plan; THENCE extending along the same North 53 degrees, 08 minutes, East 103.00 feet to a point; THENCE extending along Lots #56 and #55 on said Plan, South 38 degrees, 00 minutes, East 199.68 feet to a point; THENCE extending along Lot #48 aforementioned South 75 degrees, 37 minutes, 03 seconds West 105.76 feet to a point and place of beginning.

BEING LOT #47 on said Plan

Subject to easements, restrictions, and covenants of record, if any.

WHEN RECORDED MAIL TO:

This instrument was prepared by

Brandon Walton NMLS# 192734
Springleaf Financial Services
187 Kenwood Dr North Levittown, PA 19055

_____    [Space above This Line for Recording Data]    _____

# LOAN MODIFICATION AGREEMENT
## (For Modifying Closed End Mortgage Loans)

This Loan Modification Agreement ("Agreement"), made and effective this **28th** day of
**August** , **2012** , by and between
**Mark Nottingham and Carolyn Nottingham** ("Borrower") and
**Springleaf Financial Services of Pennsylvania f.k.a. American General Financial Services Inc.**

("Lender"), modifies, amends, and supplements (to the extent this Agreement is inconsistent with their terms):
(1) the Mortgage, Deed of Trust, Deed to Secure Debt, or Security Deed ("Security Instrument"), and the Rider(s), if
any, dated the **27th** day of **October** , **2008** , and recorded in Book or Liber **5937** , at
page(s) **1736** , of the **Bucks County** Records of **Deeds** and

(2) the Loan Agreement ("Note") to Lender, dated the **27th** day of **October** ,
**2008** , and secured by the Security Instrument, which covers the real and personal property described in the
Security Instrument and defined therein as the "Property", in the original principal balance of
U.S. $ **36912.25** , located at:
**1218 PRIMROSE CRT, BENSALEM PA 19020**

_____
(Property Address)

This agreement also supercedes and replaces any prior loan modification agreement(s) between Lender and Borrower
as of the effective date of this Agreement

And, if this document is to be recorded, the real property described is set forth as follows:
SEE EXHIBIT "A"

070-00866 (REV. 8-11) CE MOD AGREEMENT                     1

Terms not defined in this Agreement are as defined in the Note and/or Security Instrument.

As of the Modification Effective Date, the amount of the principal balance payable under the Note and the Security Instrument (the "Unpaid Principal Balance") will be $ 36346.53_____ , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized, if permitted by law.

In consideration of the mutual promises and agreements contained herein, Borrower and Lender (together the "Parties") agree that beginning on the Modification Effective Date, and after both Parties have executed this Agreement, (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  The interest rate on the Unpaid Principal Balance will begin to accrue as of the date of this Agreement at 10.00_____ %. $ 0_____ of the Unpaid Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 36,346.53_____ . The unpaid and deferred interest that has not been capitalized (the "Deferred Interest") will be $ 0_____ . **\*Assuming no additional sums are advanced under the Note and assuming that all monthly payments are made in full and on time, my payment schedule, including my monthly payments and interest rate, and my Total Deferred Payment Amount as defined below, based on the current principal balance, will be:**

| Months | Interest Rate | Interest Rate Change Date | Monthly* Payment | Payment Begins On |
|--------|---------------|---------------------------|------------------|-------------------|
| 1 - 240 | 10.00 % | (Date of Agreement) 08/28/12 | 350.75 | 09/1/12 |
| XX - XXXX | XXXX % | XXXXXXXXXX | XXXXXXXXXXXXXXX | XXXXXXXXXXXXXX |

Borrower also agrees to pay in full $ 0_____ , which is the sum of (1) the Deferred Principal Balance and (2) Deferred Interest (the "Total Deferred Payment Amount"), plus any other amounts still owed by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or on (iii) the maturity date ("Maturity Date").

2.  Remaining Term: If Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement on the "Maturity Date", those amounts will be immediately due and payable on the Maturity Date by the Borrower.
    ☑ If checked, the new Maturity Date is the 1st___ day of August_____ , 2032___ .

070-00866 (REV. 8-11) CE MOD AGREEMENT          2

3. <u>Place of Payment</u>. Borrower must continue to make the monthly payments in the manner and at such place as Lender may require.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date of this Agreement:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

In Witness Whereof, Lender and Borrower have executed this Agreement.

Springleaf Financial Services of Pennsylvania
_____        _____ (Seal)
Name of Lender                                Borrower

                                              _____ (Seal)
By: _____          Borrower

_____  _____        _____ _____ (Seal)
Witness Signature          Date                 Witness Signature      Date

Exhibit A

ALL THAT CERTAIN lot or piece of ground, SITUATE in the Township of Bensalem, County of Bucks, Commonwealth of Pennsylvania, bounded and described according to a Plan of Subdivision and Land Development prepared for Salem Farm, made by Urwiler and Walter, Inc., dated June 29, 1987 and last revised April 20, 1989 and recorded June 8, 1989 in Plan Book 251 Page 85, as follows, to wit:

BEGINNING at a point on the Northeasterly side of Primrose Court as shown on said Plan a corner of Lot #48 on said Plan; THENCE extending along the Northeasterly changing to the northwesterly side of Primrose Court on the arc of a circle curving to the left having a radius of 50 feet the arch distance of 75.00 feet to a point; THENCE extending along Lot #46 on said Plan, North 22 degrees, 06 minutes, 06 seconds West 104.72 feet to a point on the Southeasterly side of Edge Avenue as shown on said Plan; THENCE extending along the same North 53 degrees, 08 minutes, East 103.00 feet to a point; THENCE extending along Lots #56 and #55 on said Plan, South 38 degrees, 00 minutes, East 199.68 feet to a point; THENCE extending along Lot #48 aforementioned South 75 degrees, 37 minutes, 03 seconds West 105.76 feet to a point and place of beginning.

BEING LOT #47 on said Plan

Subject to easements, restrictions, and covenants of record, if any.

COMMONWEALTH OF PENNSYLVANIA )
                                    ) SS
COUNTY OF _____Bucks_____ )

On this, the 28th day of August, 2012, before me _____
_____Brandon Walton_____, the undersigned officer, personally appeared
____Mark Nottingham and Carolynn Nottingham_____

known to me (or satisfactorily proven) to be the person whose name _are_ subscribed to the within
instrument, and acknowledged that _they_ executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal. _____

_____
Title of Officer

NOTARIAL SEAL
Brandon Walton
NOTARY PUBLIC
Tullytown Boro, Bucks County
My Commission Expires 01/24/2016

# **EXHIBIT B**

Secondary Mortgage Loan
This agreement is subject to the provisions of the Secondary Mortgage Loan Act

**AMERICAN GENERAL FINANCIAL SERVICES**

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

| DATE 10/27/08 | ACCOUNT NUMBER ▉▉▉ | TYPE OF LOAN (Alpha) I00 |
|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | LENDER'S TELEPHONE NUMBER 215-633-7501 |
|---|---|

AMERICAN GENERAL FINANCIAL SERVICES, INC.
BENSALEM PLAZA
2078 STREET RD
BENSALEM, PA 19020-3702

**BORROWER(S) NAME AND ADDRESS ("I","We")**

CAROLYN NOTTINGHAM
MARK NOTTINGHAM
1218 PRIMOSE COURT
BENSALEM, PA 19020

I will read this entire Loan Agreement and Disclosure Statement ("Agreement") and all related documents carefully. If I have any questions, I will ask them before I sign any of these documents. By signing, I am indicating my agreement to the statements, promises, terms, and conditions contained in the documents I sign.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 14.13 % | $ 72005.33 | $ 35862.25 | $ 107867.58 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 463.37 * | 12/01/08 |
| 239 | $ 449.39 * | monthly beginning 01/01/09 |

LATE CHARGE: [X] If any payment is not paid in full within __15__ days after its due date, I will be charged __10.00__ % of the unpaid amount of the payment, but not more than $ N/A or less than $ 20.00.

[ ] If any payment is not paid in full within _____ days after its due date, I will be charged $ _____ if the entire scheduled payment exceeds $ _____ or $ _____ if the entire scheduled payment is $ _____ or less.

PREPAYMENT: If I pay off early:

[ ] I may [X] I will not have to pay a penalty or minimum charge.

[ ] I may [X] I will not get a refund or credit of part of the finance charge.

SECURITY: I am giving Lender a security interest in:

[X] Real estate located at: 1218 PRIMOSE COURT
BENSALEM, PA 19020

[ ] Motor Vehicles

| Year | Make | Model | Vehicle Identification No. |
|---|---|---|---|
| | | | |
| | | | |

[ ] Other Assets

| Other Assets Description |
|---|
| |

[ ] Household Items described on the Personal Property Appraisal Form, which I have signed and which has been delivered to me with this Agreement.

ASSUMPTION: Someone buying my home, if it secures this loan, may not assume the remainder of this loan on the original terms unless approved by Lender.

[ ] My loan contains a variable-rate feature. Disclosures about the variable-rate feature have been provided to me earlier.

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

_____
Borrower

_____
Co-Borrower

### SEE REVERSE SIDE FOR ADDITIONAL DISCLOSURES

PABA51 (11-30-03) PA (Second Mortgage Law) Agreement (1-2)          Page 1

## ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| # | $ | | | PAID TO |
|---|---|---|---|---|
| 1. | $ NONE | | | PAID TO |
| 2. | $ NONE | | | PAID TO |
| 3. | $ NONE | | | PAID TO |
| 4. | $ NONE | | | PAID TO |
| 5. | $ NONE | | | PAID TO |
| 6. | $ NONE | | | PAID TO |
| 7. | $ NONE | | | PAID TO |
| 8. | $ | 350.00 | Appraisal Fee | PAID TO DATASEARCH |
| 9. | $ NONE | | | PAID TO |
| 10. | $ NONE | | | PAID TO |
| 11. | $ NONE | | | PAID TO |
| 12. | $ NONE | | | PAID TO |
| 13. | $ | 456.75 | Title Insurance Fee | PAID TO DATASEARCH |
| 14. | $ NONE | | | PAID TO |
| 15. | $ NONE | | | PAID TO |
| 16. | $ | 55.50 | Recording/Releasing Fees RE | PAID TO GOVERNMENT AGENCY |
| 17. | $ NONE | | | PAID TO |
| 18. | $ NONE | | | PAID TO |
| 19. | $ NONE | | | PAID TO |
| 20. | $ NONE | | | PAID TO |
| 21. | $ | 2272.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CAP ONE |
| 22. | $ | 129.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND JCPENNY |
| 23. | $ | 241.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CHADWICK |
| 24. | $ | 771.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND MACYS |
| 25. | $ | 2546.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND TARGET |
| 26. | $ | 2228.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND SEARS |
| 27. | $ | 637.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND BOSCOV |
| 28. | $ | 142.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND THD |
| 29. | $ | 11522.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CITI |
| 30. | $ | 486.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CHASE |
| 31. | $ | 447.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND KOHLS |
| 32. | $ | 2731.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND FREEDOM |
| 33. | $ | 1263.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CAP ONE |
| 34. | $ | 335.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CAP ONE |
| 35. | $ | 1917.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND CAP ONE |
| 36. | $ | 108.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND BOSCOV |
| 37. | $ | 4180.00 | | PAID TO CAROLYN AND MARK NOTTINGHAM AND ASPIRE |
| 38. | $ | | | PAID TO |
| 39. | $ | | | PAID TO |
| 40. | $ | | | PAID TO |
| 41. | $ | | | PAID TO |
| 42. | $ | | | PAID TO |
| 43. | $ | | | PAID TO |
| 44. | $ | | | PAID TO |
| 45. | $ | | | PAID TO |

Amount Paid on Prior Account with Lender

| 46. | $ NONE | | |

Amounts Paid to me

| 47. | $ | 3045.00 | PAID TO CAROLYN AND MARK NOTTINGHAM |
| 48. | $ | | PAID TO |
| 49. | $ | | PAID TO |
| 50. | $ | | PAID TO |
| 51. | $ | | PAID TO |
| 52. | $ | | PAID TO |
| 53. | $ | | PAID TO |
| 54. | $ | | PAID TO |
| 55. | $ | | PAID TO |
| 56. | $ | | PAID TO |

|   | $ | 35862.25 | Amount Financed (Sum of lines 1 - 56) |
|---|---|---|---|
|   | $ | 1050.00 | Prepaid Finance Charges (Itemized below) |

## PREPAID FINANCE CHARGES

| 1 | $ | 1050.00 | Application Fee | PAID TO LENDER |
|---|---|---|---|---|
| 2. | $ NONE | | | PAID TO |
| 3. | $ NONE | | | PAID TO |
| 4. | $ NONE | | | PAID TO |
| 5. | $ NONE | | | PAID TO |
| 6. | $ NONE | | | PAID TO |
| 7. | $ NONE | | | PAID TO |
| 8. | $ NONE | | | PAID TO |
| 9. | $ NONE | | | PAID TO |
| 10. | $ NONE | | | PAID TO |
| 11. | $ NONE | | | PAID TO |
| 12. | $ NONE | | | PAID TO |
| 13. | $ NONE | | | PAID TO |
| 14. | $ NONE | | | PAID TO |
| 15. | $ NONE | | | PAID TO |

**SEE NEXT PAGE FOR IMPORTANT INFORMATION**

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person--the arbitrator--instead of a judge or jury, to resolve the dispute. **TO THE FULLEST EXTENT PERMITTED BY LAW, BY SIGNING THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT ("this Arbitration Agreement").**

**CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve by BINDING ARBITRATION all claims and disputes between us ("Covered Claims"). This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:

My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any insurance product, service contract, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule, any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

**COVERED CLAIMS AGAINST THIRD PARTIES.** This Arbitration Agreement also covers any claim or dispute between me and any of Lender's employees, officers, agents, or directors; any of its affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender, any third parties that assigned Retail Contracts or other agreements to Lender; and any of the employees, officers, agents, or directors of such affiliates or third parties. Affiliate corporations are Lender's parent corporations, subsidiary corporations, and sister corporations. Some of Lender's affiliates are American General Finance Corporation, American General Financial Services, Inc., Merit Life Insurance Co., and Yosemite Insurance Company. In addition, if Lender becomes a party in any lawsuit that I have with any third party, whether through intervention by Lender or by motion made by me or any third party, all claims in that lawsuit between me and the third party will be subject to binding arbitration under this Agreement, provided that the third party is required to agree to resolve such claims by arbitration.

**MATTERS NOT COVERED BY ARBITRATION.** I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin, or foreclosure, but instead may proceed in court for those judicial remedies (an "Excluded Collateral Lawsuit"). I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counter claim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. Instead of pursuing arbitration, either Lender or I also have the option to bring a lawsuit in court to seek to recover an amount which does not exceed the total sum of $5,000.00 (including costs and attorneys' fees), provided that no relief other than such recovery is requested in such lawsuit (an "Excluded Damages Lawsuit"). If an Excluded Damages Lawsuit is filed, the other party cannot require that the claims in that lawsuit be arbitrated. An Excluded Damages Lawsuit can be brought to recover money for myself or Lender only, not for any class or group of persons having similar claims. If such an Excluded Damages Lawsuit is filed by me or Lender, and any party to that lawsuit files an amendment, counterclaim, cross-claim, or third-party claim seeking to recover more than $5,000, then that claim, counterclaim, cross-claim, or third party claim must be arbitrated in accordance with the procedures set forth in this Arbitration Agreement. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin, or foreclosure or by having filed any claims in court seeking to recover a total sum of $5,000.00 or less.

**ARBITRATION RULES AND PROCEDURES.**

**A.   ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the rules and procedures of the National Arbitration Forum ("NAF") that are in effect at the time arbitration is started and under the rules set forth in this Arbitration Agreement. At my request, Lender will provide me a copy of the NAF Rules. If I lose my copy, Lender will give me another one if I ask for it. I may also obtain a copy of those rules by calling NAF at 1-800-474-2371 or by reviewing NAF's web-site at www.arb-forum.com. In the event that NAF is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the NAF for good cause, then Lender and I agree to submit all disputes to the American Arbitration Association ("AAA") for proceedings conducted pursuant to the AAA's Commercial Rules and Expedited Procedures. If there is a conflict between the rules of the NAF (or the AAA) and this Arbitration Agreement, this Arbitration Agreement will govern.

**B.   SELECTION OF ARBITRATOR.** NAF maintains lists of approved arbitrators. NAF will provide Lender and me each a list of seven (7) possible arbitrators. Lender and I will each have an opportunity to strike three (3) persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator.

**C.   STARTING ARBITRATION.** Before I start arbitration, I agree to write to Lender at the address shown for Lender in this Agreement, unless I have received notice of a new address for Lender, and I agree to give Lender a reasonable opportunity to respond and resolve any errors. In my letter, I will give the following information: my name and account number, a description of my claim or dispute and why I believe Lender has made an error, the dollar amount of my claim or dispute, and a description of any other information I need from Lender. Before Lender starts an arbitration, it must write to me at my billing address; describe its claim or dispute; state the dollar amount of its claim or dispute; and give me a reasonable opportunity to resolve the claim or dispute. If a Covered Claim cannot be resolved in the foregoing manner, either Lender or I can start arbitration. Except as described in Paragraph E below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. To start an arbitration, Lender and I agree to follow the rules of the NAF (or, if applicable, the rules of the AAA).

**D.   COSTS OF ARBITRATION.** The NAF and AAA charge certain fees in connection with arbitration proceedings they conduct. I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or the terms of any other agreement with me. Each party will also pay for its own costs, including fees for attorneys, experts, and witnesses, unless otherwise provided by law or by the terms of any other agreement between the parties, to the extent permitted by applicable law.

**E.   CONDUCT OF PROCEEDINGS.** In conducting the arbitration proceedings, the arbitrator shall be bound by the Federal Rules of Evidence; however, the federal or any state rules of procedure or discovery shall not bind the arbitrator. The arbitrator's findings, reasoning, decision, and award shall be set forth in writing and shall be based upon and be consistent with the law of the jurisdiction that applies to the loan or other agreement between Lender and me. The arbitrator must abide by all applicable laws protecting the attorney-client privilege, the attorney work product doctrine, or any other applicable privileges.

### SEE REVERSE SIDE FOR ADDITIONAL ARBITRATION TERMS

## ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL (con'd)

**F. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding, and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims involving more than $100,000, any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the NAF or AAA, as the case may be. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision, and award shall be subject to judicial review on the grounds set forth in 9 U.S.C. § 10, as well as on the grounds that the findings, decision, and award are manifestly inconsistent with the terms of this Arbitration Agreement and any applicable laws or rules.

**G. LIMITATION OF PROCEEDINGS.** Lender and I further agree that the arbitrator will be restricted to resolving only the claims, disputes, or controversies between Lender and me and the other parties covered by this particular Agreement (and not by similar agreements). Arbitration is not available and shall not be conducted on a class-wide basis or consolidated with other claims or demands of other persons. I agree not to participate in a representative capacity or as a member of any class of claimants pertaining to any Covered Claim.

**H. LIMITATION OF ARBITRATOR'S AUTHORITY:** The arbitrator may award punitive damages only under circumstances where a court of competent jurisdiction could award such damages. In awarding any punitive damages, the arbitrator must abide by all applicable state and federal laws regarding the amount of such damages, and the arbitrator must state the precise amount of the punitive damages award. The arbitrator must also conduct a post-award review of any punitive damages, allowing the parties the same procedural rights and using the same standards and guidelines that would apply in a judicial proceeding in the state where the arbitration is conducted. The arbitrator may award injunctive relief that would benefit either Lender or me in connection with resolving a Covered Claim between Lender and me, but the arbitrator may not award injunctive relief for the benefit of other persons or groups of persons who are not named parties to the arbitration proceeding.

**I. LOCATION OF THE ARBITRATION.** The arbitration will take place in the county where I live unless Lender and I agree to another location. If Lender and I agree, all or a portion of the arbitration proceedings can be conducted by telephone conference.

**J. ENFORCEMENT IN COURT.** Nothing in this Arbitration Agreement shall prevent either Lender or me from enforcing all rights under this Arbitration Agreement if a Covered Claim is filed in court.

**K. FORUM SELECTION CLAUSE.** If either Lender or I need to file a lawsuit to enforce this Arbitration Agreement or to pursue claims that either may or may not be arbitratable under this Arbitration Agreement, the exclusive venue for that suit will be a state court located in the county where Lender's office is located or where I sign this Agreement, or in the federal court covering that county, unless the governing law requires suit to be filed in another location. Nothing in this paragraph shall prevent either Lender or me from enforcing its or my rights under this Arbitration Agreement if the Covered Claim is filed in court.

**ADDITIONAL INFORMATION.** I may obtain additional information about arbitration by contacting the National Arbitration Forum, Inc., at P.O. Box 50191, Minneapolis, Minnesota 55405. (800-474-2371 (Telephone)). (651-631-0802 (Fax)). www.arb-forum.com (e-mail).

**OTHER IMPORTANT AGREEMENTS.** Lender and I agree:

(a) This Arbitration Agreement does not affect any statute of limitations or claims of privilege recognized at law.

(b) The loan and insurance transactions between Lender and me and other applicable parties are transactions involving interstate commerce, using funds and other resources from outside the state.

(c) The Federal Arbitration Act applies to and governs this Agreement. State arbitration laws and procedures shall not apply to this Agreement.

(d) This Agreement applies to and runs to the benefit of Lender's and my assigns, successors, executors, heirs, and/or representatives.

(e) If any term of this Arbitration Agreement is unenforceable, the remaining terms are severable and enforceable to the fullest extent permitted by law.

(f) This Arbitration Agreement supersedes any prior arbitration agreement that may exist between Lender and me and can only be modified in writing signed by the parties.

(g) This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged off, or discharged or modified in bankruptcy.

I AGREE TO READ THIS ARBITRATION AGREEMENT CAREFULLY, BECAUSE IT LIMITS CERTAIN OF MY RIGHTS, TO THE EXTENT PERMITTED BY LAW, INCLUDING MY RIGHTS TO BRING A COURT ACTION, TO HAVE A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION OR CLASS ARBITRATION. BY SIGNING THIS AGREEMENT, I ACKNOWLEDGE THAT I HAVE READ AND RECEIVED A COPY OF THIS ARBITRATION AGREEMENT AND AGREE TO BE BOUND BY ALL OF ITS TERMS.

### SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, I will be in default of this Agreement if any one of the following occurs:

    A.  I fail to make any payment under this Agreement when due.

    B.  I fail to do anything else I have agreed to do in this Agreement.

    C.  Any statement or representation I made in my credit application is untrue or incorrect.

    D.  I fail to provide Lender with proof of employment, residence, insurance, or repair to credit history within three (3) business days after Lender's written request for this information.

    E.  I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

    F.  Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.

    G.  Any police or governmental agency seizes or impounds the Collateral, if the Collateral consists of personal property, or starts forfeiture proceedings against the Collateral.

    H.  If the Collateral consists of personal property, I relocate to another state without giving written notice at least 30 days before relocating.

    I.  I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

    J.  Any other event or circumstance occurs that reasonably causes Lender to deem itself insecure or to believe that Lender's prospects for payment or realization upon the Collateral are impaired, unless prohibited by state law.

**(For Kansas residents only,** Lender believes the preceding events would significantly impair the prospect of payment, performance, or realization of Collateral. Except for a default resulting from my failure to make any payment as required by this Agreement, the burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default on this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

    A.  Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue finance charges from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.

    B.  Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges from the date paid at the Contract Rate until repaid in full to Lender.

    C.  If the Collateral consists of personal property, Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.

    D.  If the Collateral consists of personal property, Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses.

    E.  Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.

    F.  If the Collateral consists of real property, Lender may begin foreclosure proceedings as described in the mortgage or deed of trust granting Lender a security interest in the Collateral.

    G.  Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit or personal property insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.

    H.  Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights are hereunder cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral if it is personal property, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral securing this Agreement and taken into possession as provided above.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default, or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement, if mailed, to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the Principal, as defined below, that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

<div style="border:1px solid black; padding:4px;">

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement:

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

</div>

<div style="border:1px solid black; padding:4px;">

I/We acknowledge that my/our monthly scheduled payments under my/our Agreement with Lender do not include payments for property taxes (or special assessments), or premiums for insurance covering the property. There are no escrow or impound accounts under my/our Agreement. Taxes and insurance costs can be substantial.

I/We agree to make required payment(s) to the appropriate taxing authority and/or insurance provider as they are due.

</div>

**SEE FOLLOWING PAGE FOR ADDITIONAL INFORMATION**

**DATE OF LOAN.** 10/31/08 (the date the Finance Charges schedule to begin to accrue).

**CONTRACT RATE.** 13.64 % per year, which is the agreed interest rate. If the "Adjustable Rate Loan" box is checked below, this rate is subject to change as set forth therein.

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the Truth in Lending Disclosure on page 1 of this Agreement, and with all other terms of this Agreement. If the "Adjustable Rate Loan" box is checked below, the payment amounts set forth in the Payment Schedule may change as set forth in this Agreement.

☐ **ADJUSTABLE RATE LOAN.** If this box is checked, I agree that the agreed interest rate I will pay may change on the Due Date of my _____ payment and on that same date every _____ thereafter ("the Change Date"). If there is no corresponding date in any given month, the Change Date will be the last day of the month (For example, if my rate can change quarterly and my Change Date is January 31, my next Change Date will be April 30.) My interest rate will be based on an index plus a margin. The index is the highest Prime Rate published in The Wall Street Journal's "Money Rates" table. If this index should no longer be available, Lender will choose a comparable replacement index and will inform me of the new index. The Contract Rate and the monthly payment amounts may change as set forth herein.

Prior to each Change Date, Lender will calculate the new agreed interest rate by taking the index as of 60 days prior to the Change Date and adding a margin of _____ percentage points. Lender will round the resulting figure down to the next lowest one-hundredth of one percent. Lender will then determine the new monthly payment amount necessary to repay my loan in full on the due date for the final payment.

My interest rate will never increase or decrease on any single Change Date by more than _____ percentage points from the agreed rate of interest in effect immediately preceding the Change Date. Any rate change not implemented as a result of this limitation may be carried over to the next Change Date. My interest rate will never increase by more than eight percentage points (for first mortgage loans) or ten percentage points (for subordinate mortgage loans) over the initial Prime Rate, and in no event will ever be greater than _____ %, and will never be less than _____ %.

The new agreed interest rate will be effective as of the Change Date. The new monthly payment will be effective as of the next regularly scheduled due date subsequent to the Change Date. Lender will send me notice of all rate and payment changes as required by law.

**SECURITY AGREEMENT.** If any type of personal property (property other than real estate ("real property")) is disclosed in the "Security" section of the Truth in Lending Disclosures, to secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (1) the property identified in the "Security" disclosure of the Truth in Lending Disclosures on page 1 of this Agreement; (2) any substitutions or replacements of that property; and (3) the proceeds and products of that property (collectively referred to as the "Collateral"). I also grant Lender a security interest in any unearned premiums from any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance). Lender's security interest shall remain in effect until I have paid in full all amounts due under this Agreement and subject to any modifications, renewals, extensions, and future advances thereof. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. If real property is disclosed in the "Security" section of the Truth in Lending Disclosures, I am signing a mortgage or deed of trust covering the real property at the same time that I am signing this Agreement.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that they are jointly and severally liable and that Lender may enforce this Agreement against all or any of them, but not in a combined amount exceeding the amount due

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Maker(s).

**CREDIT INFORMATION.** I authorize Lender to investigate my creditworthiness, including to obtain my credit report at anytime, as permitted by law.

**REQUIRED PROPERTY INSURANCE.** I agree to insure any automobiles, all terrain vehicles, snowmobiles, watercraft, other titled vehicles, large equipment, and dwellings and other structures attached to real property ("Property"), in which I have granted Lender an interest to secure my loan, against all risks of physical damage, including loss by fire and other hazards, for the term of the loan, in amounts and with deductibles approved by Lender ("Required Insurance"). Required Insurance must: (1) be issued by an insurer and have terms and conditions satisfactory to Lender; (2) name Lender as loss payee or mortgagee; (3) not permit the addition of any other loss payee or mortgagee to the insurance policy unless Lender consents in writing; (4) provide that such insurance will not be canceled or modified without at least 15 days prior written notice to the loss payee or mortgagee; and (5) not include any disclaimer of the insurer's liability for failure to give such notice. I may purchase Required Insurance from whomever is acceptable to Lender or provide existing coverage through any insurance company or agent of my choice that is acceptable to Lender. Lender does not sell Required Insurance. I agree to provide to Lender satisfactory proof of Required Insurance. I agree to keep Required Insurance in force until all amounts I owe Lender under this Agreement are paid in full. In the event of damage to or loss of the Property, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may, but is not required to, do so on my behalf. I agree Lender may use any insurance proceeds to reduce any amounts I owe under this Agreement. To the extent permitted by law, I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds paid to Lender do not pay off all amounts I owe Lender under this Agreement, I remain responsible for payment of the balance of any amounts due under this Agreement.

**LENDER PLACED INSURANCE.** If at any time I fail to buy or keep in force Required Insurance, Lender may, but is not required to, purchase Required Insurance at my expense to protect Lender's interest in the Property. I agree that Required Insurance may, but to the extent permitted by law, need not, protect my interests. The coverage purchased by Lender may not pay any claim I make. I agree that the cost of Required Insurance purchased by Lender may be much more than the cost of Required Insurance I could have obtained on my own, and I agree that the cost of such Required Insurance may, to the extent permitted by law, be added to my loan balance and accrue interest at the Contract Rate. I authorize Lender to release to third parties any information necessary to monitor the status of Required Insurance on my Property and to purchase Required Insurance required by this Agreement.

**VOLUNTARY CREDIT INSURANCE.** Lender's affiliate may provide the credit insurance that I voluntarily select. Lender and/or its affiliates expect to profit from my purchase of voluntary credit and personal property insurance and I consent to this. The terms "credit insurance" and "credit life insurance" include debtor group life insurance, where offered.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** I, where authorized by law, hereby assign to Lender any moneys, not in excess of the unpaid balance of indebtedness which this instrument secures, which may become payable under any insurance I have elected and purchased through Lender in connection with this transaction which protects the loan account or Collateral (including, but not limited to, voluntary credit and personal property insurance), including return of unearned premiums, and direct any insurance company to make payment directly to Lender to be applied to said unpaid indebtedness and I hereby appoint Lender as my attorney-in-fact to endorse any draft, check or other papers necessary to obtain such insurance payments.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release all liens upon payment in full. Lender may consider any breach of this requirement as an event of default of this Agreement.

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title, or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** The fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any party without the express written consent of Lender.

**SEE REVERSE SIDE FOR ADDITIONAL INFORMATION**

UNATG1 (10-14-07) Agreement (5-6)                    Page 5                    Initials

**RENEWAL AND REFINANCING:** If insurance is written in connection with a renewed or refinanced account which was previously insured under the Group Policy, the Effective Date will be deemed to be the date the original insurance took effect, to the extent of the amount and term of the account outstanding at the time of renewal or refinancing.

**TERMINATION OF GROUP POLICY:** The Group Policy may be cancelled by either the Creditor or by Us at any time by giving 30 days written notice to the other party. In the event the Policy is terminated for any reason, You shall be provided written notice at least 30 days prior to the effective date of termination and Your coverage shall continue for the remainder of the TERM OF YOUR INSURANCE for which premium is received.

**CANCELLATION:** You may cancel this insurance at any time by providing a signed and dated written request to Us or the Creditor. The insurance will then terminate at the end of the month for which a premium was received. In the case of joint insurance, both Borrowers must sign the written cancellation request.

**MISSTATEMENT OF AGE:** If You misstate Your age on the application and You are ineligible for insurance at the correct age, and We discover the misstatement within two years, no insurance will be in effect and Our liability is limited to a refund of all premium You paid. Otherwise, coverage will remain in force as originally issued. The refund will be paid by the Creditor to You or, at the Creditor's option, credited to Your account. In the case of joint insurance, the refund will be the difference between the premiums actually charged and the premiums that would have been charged for single coverage. A single insurance certificate will be issued to continue the insurance on the eligible Borrower.

If You misstate Your age on the application and You are eligible at the correct age, no insurance is in effect for a period longer than would be in effect under the Policy at the correct age, provided We discover the misstatement within two years. Otherwise, coverage will remain in force as originally issued. In the case of joint insurance, a single insurance certificate will be issued to continue the insurance on the eligible Borrower.

**AGE REQUIREMENTS:** If You correctly stated Your age on the application and Your age exceeds the Maximum Issue Age in the Schedule and coverage was issued in error, upon discovery of the error Your coverage will cancel at the end of the period for which a premium was received, provided such termination of coverage is made within 60 days from the date of application and while You are alive and not totally and permanently disabled. Otherwise, coverage will remain in force as originally issued subject to the TERMINATION OF YOUR INSURANCE provision. In the case of joint insurance, a single insurance certificate will be issued to continue the insurance on the eligible Borrower, and the Borrower will be charged the monthly premium rate for single insurance coverage.

**INCONTESTABILITY:** This Certificate is incontestable after it has been in force for two years during Your lifetime. All statements made by You are deemed representations and not warranties. No statement relating to insurability shall be used to contest this Certificate unless it is contained in a written application signed by You. A copy of the application must be furnished, not later than when coverage is contested, to You, Your Second Beneficiary or other claimant.

In the case of joint insurance, if the insurance is contested, Our liability is limited to a refund of the difference between the premiums actually charged and the premiums that would have been charged for single insurance. A single insurance certificate will be issued to continue the insurance on the eligible Borrower. The refund will be paid by the Creditor to You or, at the Creditor's option, credited to Your account.

**ASSIGNMENT:** The interest of the Creditor and/or You in the Group Policy and/or this Certificate is not assignable. We will not be bound by any assignment or transfer of interest.

**MODIFICATIONS:** All changes or modifications made by Us are signed by Our President, Vice President or Secretary. No other person has authority to alter or waive any of the conditions of the Group Policy or this Certificate or make any agreement which shall be binding upon Us. Any changes, except for a change in rates, will only affect new Borrowers becoming insured after the date of the changes.

**ENTIRE CONTRACT:** The Group Policy, any attached rider or amendment and the Group Policy Application constitute the entire contract of insurance.

**CONFORMITY WITH STATE STATUTES:** Any provision of this Certificate and/or the Group Policy which is in conflict with the statutes of the state in which the Group Policy is delivered is amended to comply with such statutes. It is understood that any changes in state regulations or laws will apply if those changes affect any coverage contained in this Certificate and/or the Group Policy.

**INTEREST BEARING LOAN.** I agree to pay Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the amounts and on or before the dates set forth in the Payment Schedule in the Truth in Lending Disclosures on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. If the "Adjustable Rate Loan" box is checked above, the Contract Rate and the monthly payment amounts may change as set forth therein. If I have not purchased credit insurance or have purchased single premium credit insurance, all payments will be applied in the following order to: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest; and (c) unpaid Principal. If I have purchased credit insurance that is billed on a monthly basis, all payments will be applied in the following order to. (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) any past due credit insurance premiums billed on a monthly basis; (c) any past due loan payment(s); (d) currently due credit insurance premiums that are billed on a monthly basis; and (e) currently due loan payment. When applying payments to past and currently due loan payments, monies will be applied first to accrued interest with the remainder, if any, being applied to unpaid Principal. Because interest on my loan is earned daily, early payments will decrease the amount I owe, and late payments will increase that amount. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full.

**PRINCIPAL.** Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☐ **BALLOON PAYMENT.** If checked, my last scheduled payment is larger than my regular scheduled payments ("Balloon Payment"). I agree that, unless Lender has agreed to refinance my Balloon Payment, I must pay the full amount of my Balloon Payment from my own resources or by refinancing my loan with another lender on or before the due date of my Balloon Payment.

**PREPAYMENT REFUND.** I may prepay all or any part of my loan at any time, subject to the payment of the penalty (if any) described below. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

**PREPAYMENT PENALTY.**

☒ If checked, there will be no prepayment penalty.

☐ If checked, the original Principal exceeds $50,000, and if I prepay ____% or more of the outstanding balance on my loan, Lender may charge and I agree to pay a prepayment penalty computed as follows: 5% of the outstanding balance of this loan if prepaid during the first year after the Date of Agreement; 4% of the outstanding balance of this loan if prepaid during the second year after the Date of Agreement; 3% of the outstanding balance of this loan if prepaid during the third year after the Date of Agreement; 2% of the outstanding balance of this Loan if prepaid during the fourth year after the Date of Agreement; or 1% of the outstanding balance of this loan if prepaid during the fifth year after the Date of Agreement, unless: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) this loan is prepaid with insurance proceeds; (c) this loan is prepaid as a result of lawsuit, foreclosure, or acceleration; (d) Lender disapproves a request for assumption and exercises its rights under a due on sale clause, and imposition of the prepayment penalty is prohibited by applicable law; or (e) this loan is prepaid more than ____ months after the Date of Agreement.

☐ If checked the original Principal exceeds $50,000, this loan has a Balloon Payment, and I may prepay all or part of my loan at any time; however, if, during the first ____ months after the Date of Agreement, I prepay more than ____% of the original Principal in any 12 month period, Lender may charge and I agree to pay a prepayment penalty equal to ____ months of my regular scheduled payments on this loan unless: (a) this loan is refinanced or consolidated by Lender or its affiliate; (b) this loan is prepaid with insurance proceeds; (c) this loan is prepaid as a result of lawsuit, foreclosure, or acceleration; (d) Lender disapproves a request for assumption and exercises its rights under a due on sale clause, and imposition of the prepayment penalty is prohibited by applicable law; or (e) this loan is prepaid more than ____ months after the Date of Agreement.

**LATE CHARGE.** I agree to pay any late charge described in the Truth in Lending Disclosures herein.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $ 50.00 .

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** The laws of the Commonwealth of Pennsylvania shall govern this Agreement, except as preempted by federal law.

## PLEASE SEE IMPORTANT INFORMATION ON REVERSE

**ENTIRE AGREEMENT.** This Agreement, which includes the Insurance Disclosure Summary, if one was provided to you, contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

**IF I DEFAULT AND THIS LOAN IS SECURED BY A MORTGAGE ON MY HOME, I MAY LOSE MY HOME.**

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE NATIONAL ARBITRATION FORUM, EXCEPT AS OTHERWISE PROVIDED IN THE ARBITRATION AGREEMENT.** UNARBT (8-12-01)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of this Agreement, the Truth in Lending Insurance Disclosures, the Privacy Notice, the Personal Property Appraisal Form(if applicable), and two copies of a Notice of Right to Cancel (if applicable) and agree to be bound thereby.

x_____    x_____ L.S.
Witness                               Borrower    CAROLYN NOTTINGHAM

x_____    x_____ L.S.
Witness                               Co-Borrower  MARK NOTTINGHAM

                                      x_____ L.S.
                                      Co-Maker

                                      Print Name: _____

                                      x_____ L.S.
                                      Co-Maker

                                      Print Name: _____

**Prepared by:**
Bill Koch
Select Portfolio Servicing, Inc.
3217 S. DECKER LAKE DRIVE
SALT LAKE CITY, UT, 84119
(800) 258-8602

**When Record Return To:**
Jeff Prose
Richmond Monroe Group
82 Jim Linegar Ln
Branson West, MO, 65737
(417) 447-2931

## CORPORATE ASSIGNMENT OF MORTGAGE

Assignment Prepared on: January 23, 2020

**ASSIGNOR: ONEMAIN FINANCIAL SERVICES, INC. AS SUCCESSOR BY MERGER TO SPRINGLEAF FINANCIAL SERVICES F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC. BY SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT**, at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

**ASSIGNEE: ONYX BAY TRUST,** at C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee interest under that certain Mortgage Dated: 10/27/2008, in the amount of $36,912.25, executed by MARK NOTTINGHAM AND CAROLYNN NOTTINGHAM to AMERICAN GENERAL FINANCIAL SERVICES, INC. and Recorded: 10/28/2008, Instrument #: 2008091274, Book: 5937, Page: 1736 in BUCKS County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is C/O SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT, 84119

Attested By:_____   JORGE PINERO

The property is located in the Township of BENSALEM.
Property Address: 1218 PRIMOSE COURT, BENSALEM, PA, 19020

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

ONEMAIN FINANCIAL SERVICES, INC. AS SUCCESSOR BY MERGER TO SPRINGLEAF
FINANCIAL SERVICES F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC. BY
SELECT PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT

On: _____ FEB 0 6 2020 _____

By: _____
Name: _____ Jorge Pinero _____
Title: ____ Document Control Officer ____

STATE OF _____ Utah _____
COUNTY OF _____ Salt Lake _____

On _____ FEB 0 6 2020 _____, before me, _____ LISA FISH _____, a Notary
Public in and for _____ Salt Lake _____ in the State of _____ Utah _____, personally
appeared ____ brge Pinero _____, ____ Document Control Officer ___, ONEMAIN
FINANCIAL SERVICES, INC. AS SUCCESSOR BY MERGER TO SPRINGLEAF FINANCIAL
SERVICES F/K/A AMERICAN GENERAL FINANCIAL SERVICES, INC. BY SELECT
PORTFOLIO SERVICING, INC., ITS ATTORNEY IN FACT, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
LISA FISH
Notary Expires: _____ JUL 1 3 2021 _____ / #: _____ 695961 _____

**PA/BUCKS**

LISA FISH
Notary Public  State of Utah
My Commission Expires on:
July 13, 2021
Comm. Number: 695961